IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADAM WEINBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-9846 |
| | ) | |
| WILLIAM BLAIR & COMPANY, LLC | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## **COMPLAINT**

Plaintiff, Adam Weinberg, by and through his attorneys, submits the following

Complaint against Defendant William Blair & Company, LLC.

## **Introduction**

1.      Defendant William Blair & Company, LLC ("William Blair") has unlawfully

discriminated and retaliated against Plaintiff Adam Weinberg ("Weinberg") on the basis

of Weinberg's race and religion and created a hostile working environment in violation

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title

VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981").

2.      Weinberg, who is Jewish, was employed by William Blair in the

Institutional Equity Sales and Trading Department ("Department") from 2000 until

2011.  During his employment Weinberg was subjected to a hostile work environment

that included the use of anti-Semitic stereotypes as well as unwelcome comments about

Jews generally.  The discrimination and harassment adversely affected Weinberg's

compensation and opportunities for advancement at the company.  It also resulted in

one set of terms and conditions for Weinberg and more favorable terms and conditions for similarly-situated, non-Jewish employees.

3.     The level of hostility and unfair treatment became so intolerable that eventually Weinberg asked the company for help and asked them to enforce its purported anti-discrimination policy. William Blair Management was furious with Weinberg for voicing his complaint and told Weinberg that he had made a grave mistake by complaining about his discriminatory treatment and that he should understand that there is not going to be any investigation by human resources or others. William Blair further told him that he should be smart enough to understand how painful it was going to be for him because he voiced his complaint. William Blair intensified its mistreatment of Weinberg, advised him to leave the company and, when he would not resign, terminated him despite the fact that he was consistently one of the top performers in his Department.

4.     Upon information and belief, William Blair's discrimination is systemic, widespread and has negatively and unlawfully impacted the employment relationship (and potential relationships) for other Jewish persons. Weinberg brings this action against William Blair to rectify the discrimination and recover all damages proximately caused by William Blair's violations of Title VII and Section 1981.

## **Jurisdiction and Venue**

5.     This is an action under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981 to correct the unlawful discrimination by William Blair against Weinberg.

6.     The discriminatory acts were committed within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

7.     This Court has jurisdiction over Weinberg's claims pursuant to 28 U.S.C. §§ 1331, 1343, 42 U.S.C. §2000e(f)(3) and 42 U.S.C. §1988.

8.     Weinberg filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued Weinberg a right to sue letter on September 10, 2012 and mailed it to him.  A copy of the EEOC's right to sue letter is attached as Exhibit 1.

## Background

9.     William Blair is a financial services company that provides investment banking, equity research, brokerage, asset management and private capital services.  It has over 900 employees and maintains its world headquarters in Chicago, Illinois.

10.     Weinberg earned his undergraduate degree in economics from Brown University in 1985.  He earned a Master's Degree in Business Administration from Harvard Business School in 1992.

11.     Weinberg accepted a position at William Blair's Chicago offices on May 8, 2000, as an Institutional Equity Salesperson.  He was employed by William Blair in that capacity until he was discriminatorily discharged on March 7, 2011.

12.     Weinberg is a practicing Jew, a fact that was commonly known by William Blair and its executives.  He was the only Jewish salesperson in the Department when he was hired and remained the only Jewish salesperson for essentially all of his employment.

## William Blair Discriminated, Harassed
## and Retaliated Against Weinberg

13.     While at William Blair, Weinberg was a hard-working, productive employee.  He was consistently one of the top performers and among the highest grossing salespeople in his department in terms of revenue generated.  In his most recent written performance review before his termination he was praised by William Blair for doing an "excellent job," being "smart and creative in his efforts to maximize his business" and one of the "hardest working people in the department."  William Blair's performance review recognized that Weinberg was a "team player", "respectful of others", and that "it has been a real pleasure working with Adam [Weinberg]."  The review highlighted that "most of [Weinberg's] account package did little to no business prior to his taking over coverage of those accounts" and that "he does an excellent job opening new accounts and maximizing penetration of existing accounts."

14.     Despite his high level of performance, Weinberg was treated less favorably than other similarly-situated, non-Jewish salespeople in his Department and, overall, subjected to less favorable terms and conditions and to harassment throughout his employment.

15.     William Blair discriminated against Weinberg with respect to his compensation.  By way of example, William Blair paid Weinberg a lower rate of commission and assigned him less valuable and fewer client accounts than similarly-situated non-Jewish employees.  Further, when Weinberg developed the less valuable accounts into profitable accounts, William Blair took actions to remove those accounts from him and redistribute them to similarly-situated non-Jewish employees.

16.     Further, William Blair discriminated against Weinberg by giving preferential treatment to similarly-situated, non-Jewish salespeople in its allocation of

-4-

valuable company resources. By way of example, William Blair showed a preference for allocating shares of initial public offerings, shares of secondary offerings, and research and market information to similarly-situated, non-Jewish employees.

17.     Despite this discriminatory treatment, Weinberg created substantial profits for William Blair. By 2004 he was generating approximately $3 million in revenues for the company annually. Similarly-situated non-Jewish salespeople with similar and lower revenue production numbers were rewarded with the opportunity for promotion. In contrast, Weinberg was denied this opportunity until 2007.

18.      When Weinberg eventually was promoted in 2007, it was in name only. Weinberg did not have authority to manage the affairs of the company, he had no say in how profits and losses of the company were distributed, he had no authority to hire or fire others, he had no authority to make financial decisions, and he did not even have control regarding the means and manner of the work he was told to perform. Weinberg remained at all times under the strict control and direction of William Blair and his supervisors.

19.     William Blair intentionally impeded Weinberg's opportunities to succeed professionally and financially throughout his employment. For example, in contrast to similarly-situated, non-Jewish salespeople:

    a.     Weinberg was excluded from recruiting activities and hiring decisions;

    b.     Weinberg was denied requests to meet informally with his managers to discuss his professional development;

    c.     Weinberg was falsely maligned, both within his Department and to other employees of William Blair with whom he worked, and to clients;

    d.     Weinberg was denied the opportunity to assume a management role despite his exceptional performance at William Blair and his management training and education;

e.   William Blair treated Weinberg as a second class citizen when it came to providing support resources.  For example, William Blair refused to assign Weinberg an associate to assist him in developing business, even though associates were assigned to non-Jewish salespeople who made similar request.

20.   William Blair imposed and enforced different and restrictive rules on Weinberg that it did not apply to non-Jewish salespeople.  For example, in contrast to non-Jewish salespeople in the department:

a.   Weinberg was required to inform his direct supervisor where he was at all times and what he was doing, while non-Jewish salespeople managed their own schedules;

b.   Weinberg was required to provide detailed explanations as to how he accomplished his work, with whom he was meeting at all times, and how he was spending his days, while non-Jewish salespeople were not;

c.   Weinberg was not permitted to take time off without explaining the specific reason for his absence, while non-Jewish salespeople were allowed to be absent from the office without notice or explanation; and

d.   Weinberg was required to follow a strict protocol for scheduling meetings with clients that non-Jewish salespersons were not required to follow.

21.   Weinberg was also subjected to harassment in the form of hostile remarks, stereotyping, and mocking and taunting by his superiors and peers.

22.   Although William Blair knew that Weinberg observed the holiest Jewish holidays of Yom Kippur, Rosh Hashanah, and Passover, William Blair scheduled Department meetings and client and other important events on these days knowing that he would be unable to participate.  Moreover, William Blair management reprimanded Weinberg for not attending, specifically excusing only "legitimate" reasons, which did not include observance of the Jewish holiday.

23.     Weinberg was mocked by superiors as well as peers and staff for being a practicing Jew.  Members of the Department mocked Weinberg for taking time from work for what they referred to as *your* holiday.

24.     Instead of complimenting Weinberg for his hard work and success at the company, when Weinberg was considered for an opportunity for advancement into a desirable position in William Blair's Investment Management Department, a senior employee told Weinberg that he was only being considered for the job because he was "Jewish" and could speak the language of certain prospective Jewish clients.

## Weinberg's Complaints Result In His Termination

25.     The level of hostility and unfair treatment became so intolerable that Weinberg asked William Blair management for help and asked them to enforce its purported anti-discrimination policy.

26.     Weinberg's request for help to stop the discrimination only made matters worse, and ultimately resulted in his termination.

27.     In accordance with William Blair's purported non-discrimination policy guidelines, Weinberg told William Blair management that he was being subjected to anti-Semitic discrimination and harassment at the company.  Weinberg specifically complained about discrimination in compensation and treatment.

28.     Shortly after the complaint, William Blair management said it was not going to conduct a detailed or thorough investigation and that it was not going to change Weinberg's manager.  Management followed this by suggesting that Weinberg leave the firm.

29.     One William Blair management member expressed anger at Weinberg for reporting the discrimination and berated him throughout a meeting.  During the

meeting management threatened that it could pull any accounts from Weinberg for any reason, threatened Weinberg with termination, told Weinberg that he had made a big mistake, and that there would not be any investigation by human resources or others.

30.     Later, a member of William Blair management walked up to Weinberg while he was at his desk and said that he was extremely angry at Weinberg, and that he would not forgive Weinberg for complaining about discrimination.

31.     After Weinberg complained to William Blair executives who were designated for receiving such complaints about discrimination, William Blair intensified its mistreatment of Weinberg.  Among other things, William Blair's management engaged in actions designed to discredit and damage Weinberg.

32.     William Blair's General Counsel admitted to Weinberg that William Blair was not going to change its ways and that this will end badly for him.  William Blair attempted to persuade Weinberg to resign from the company.

33.     Weinberg did not resign and the discrimination continued despite Weinberg's complaints.

34.     In December 2010 and early 2011, Weinberg followed up with William Blair management regarding his prior complaints and William Blair's continued discrimination.

35.     On March 1, 2011 Weinberg discussed with William Blair management his concerns about the continued discrimination and the retaliatory treatment by William Blair.

36.     On March 2, 2011, following up on previous complaints about the continuing discrimination and abusive treatment, Weinberg sent an email to William Blair management expressing disappointment and concern about this treatment.

37.     On March 7, 2011, William Blair terminated Weinberg's employment effective immediately.

38.     As a final act of discrimination and retaliation, William Blair refused to fully compensate Weinberg and refused to allow him to collect his personal belongings.

### Count I –Discrimination in Violation of Title VII

39.     Weinberg repeats and realleges paragraphs 1-38 of his Complaint as if fully set forth herein.

40.     Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, or to take any adverse action against any person on the basis of race and/or religion.

41.     The above-described acts and omissions of William Blair were taken against Weinberg in violation of Title VII because he is Jewish.

42.     William Blair intentionally discriminated against Weinberg on the basis of his race and/or religion by harassing him because he is Jewish,  intentionally treating similarly-situated, non-Jewish employees more favorably than Weinberg, and retaliating against him because he complained of William Blair's unlawful discrimination.

43.     As a direct and proximate result of William Blair's unlawful conduct, Weinberg has suffered emotional distress, economic, compensatory and other consequential damages.

44.     William Blair's actions constituted willful, reckless and malicious discrimination in violation of Title VII, entitling Weinberg to punitive damages thereunder.

## **Count II – Discrimination in Violation of Section 1981**

45.     Weinberg repeats and realleges paragraphs 1-38 of his Complaint as if fully set forth herein.

46.     Section 1981 makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, or to take any adverse action against any person on the basis of race.

47.     The above-described acts and omissions of William Blair were taken against Weinberg because of his race in violation Sec. 1981.

48.     William Blair intentionally discriminated against Weinberg on the basis of his race by harassing him because he is Jewish, intentionally treating similarly-situated, non-Jewish employees more favorably, and retaliating against him because he complained of William Blair's unlawful discrimination.

49.     As a direct and proximate result of William Blair's unlawful conduct, Weinberg has suffered emotional distress, economic, compensatory and other consequential damages.

50.     William Blair's actions constituted willful, reckless and malicious discrimination in violation of Sec. 1981, entitling him to punitive damages thereunder..

## **Count III – Retaliation in Violation of Title VII**

51.     Weinberg repeats and realleges paragraphs 1-38 of his Complaint as if fully set forth herein.

52.     Title VII makes it unlawful for an employer to retaliate against an employee for engaging in a statutorily protected activity by, *inter alia*, opposing unlawful discrimination.

53.     William Blair retaliated against Weinberg in violation of Title VII for complaining of unlawful discrimination by, *inter alia*, subjecting him to unlawful harassment, discriminatory terms and conditions of employment, and ultimately terminating his employment.

54.     William Blair's actions constituted willful, reckless and malicious retaliation in violation of Title VII, entitling him to punitive damages thereunder.

55.     As a direct and proximate result of William Blair's unlawful conduct, Weinberg has suffered emotional distress, economic, compensatory and other consequential damages.

## Count IV – Retaliation in Violation of Section 1981

56.     Weinberg repeats and realleges paragraphs 1-38 of his Complaint as if fully set forth herein.

57.     Section 1981 makes it unlawful for an employer to retaliate against an employee for engaging in a statutorily protected activity by, *inter alia*, opposing unlawful discrimination.

58.     William Blair retaliated against Weinberg in violation of Section 1981 for complaining of unlawful discrimination by, *inter alia*, subjecting him to unlawful harassment, discriminatory terms and conditions of employment, and ultimately terminating his employment.

59.     William Blair's actions constituted willful, reckless and malicious retaliation in violation of Section 1981, entitling him to punitive damages thereunder.

60.     As a direct and proximate result of William Blair's unlawful conduct, Weinberg has suffered emotional distress, economic, compensatory and other consequential damages.

## Count V – Hostile Work Environment in Violation of Title VII

61.     Weinberg repeats and realleges paragraphs 1-38 of his Complaint as if fully set forth herein.

62.     By its acts and omissions, William Blair subjected Weinberg to a hostile and offensive work environment because of his race and/or religion.

63.     As described above, William Blair's failure to take proper remedial or preventative actions in response to Weinberg's complaints contributed to the abusive and offensive hostility in the workplace.

64.     The above-described harassment was severe and pervasive and created both a subjective and objectively abusive, intimidating and hostile work environment that seriously affected Weinberg's ability to perform his job duties and the terms and conditions of his employment.

65.     William Blair's actions constituted willful, reckless and malicious discrimination in violation of the federal anti-discrimination laws including Title VII and Section 1981.  They knew that their actions were prohibited by the federal anti-discrimination law or acted with reckless disregard to that possibility.

66.     As a direct and proximate result of William Blair's unlawful conduct, Weinberg has suffered emotional distress, economic, compensatory and other consequential damages.

## Count VI – Hostile Work Environment in Violation of Section 1981

67.     Weinberg repeats and realleges paragraphs 1-38 of his Complaint as if fully set forth herein.

68.     By its acts and omissions, William Blair subjected Weinberg to a hostile and offensive work environment because of his race and / or religion.

-12-

69. As described above, William Blair's failure to take proper remedial or preventative actions in response to Weinberg's complaints contributed to the abusive an offensive hostility in the workplace.

70. The above-described harassment was severe and pervasive and created both a subjective and objectively abusive, intimidating and hostile work environment that seriously affected Weinberg's ability to perform his job duties and the terms and conditions of his employment.

71. William Blair's actions constituted willful, reckless and malicious discrimination in violation of the federal anti-discrimination laws including Title VII and Section 1981. They knew that their actions were prohibited by the federal anti-discrimination law or acted with reckless disregard to that possibility.

72. As a direct and proximate result of William Blair's unlawful conduct, Weinberg has suffered emotional distress, economic, compensatory and other consequential damages.

## **PRAYER FOR RELEIF**

WHEREFORE, Adam Weinberg respectfully requests that the Court:

A. Permanently enjoin William Blair from engaging in any employment practice that discriminates on the basis of religion or race;

B. Order William Blair to make Adam Weinberg whole by awarding appropriate back pay and other damages for past and future pecuniary losses he has suffered as a result of William Blair unlawful discrimination, in amounts to be awarded at trial;

C.     Order William Blair to immediately reinstate Weinberg to his former position or one comparable thereto that reasonably approximates the level of accounts and compensation that Weinberg deserves without discriminatory bias;

D.     Order William Blair to pay Weinberg an appropriate amount of front pay;

E.     Order William Blair to make Adam Weinberg whole by compensating him for the past and future non-pecuniary losses he suffered as a result of William Blair's unlawful discrimination, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial;

F.     Order William Blair to pay Adam Weinberg punitive and/or liquidated damages for their willful, malicious, and/or reckless conduct described above, in amounts to be determined at trial;

G.     Order William Blair to return to Adam Weinberg his personal property and to make available all electronically stored information reflecting Weinberg's personal and family information.

H.     Award Adam Weinberg his attorney's fees and costs;

I.     Award Adam Weinberg any and all other forms of relief available under Title VII and Section 1981; and

J.     Award Adam Weinberg all such other relief the Court deems just and equitable.

## JURY DEMAND

Plaintiff Adam Weinberg requests a jury trial on all questions of fact raised by his Complaint.

Dated: December 10, 2012                     Respectfully submitted,

                                             ADAM WEINBERG


                                    By:        /s/ Darrell J. Graham
                                             One of His Attorneys


Darrell J. Graham
Peter S. Roeser | John E. Bucheit
**ROESER BUCHEIT & GRAHAM LLC**
20 N. Wacker Dr., Ste. 1330
Chicago, IL  60606
312.621.0302
dgraham@rbglegal.com